ACCEPTED
15-24-00095-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
2/3/2025 3:39 PM
CHRISTOPHER A. PRINE
CLERK

No. 15-24-00095-CV

_____

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS
2/3/2025 3:39:57 PM
CHRISTOPHER A. PRINE
Clerk

# In The Court of Appeals
# Fifteenth District of Texas
# Austin, Texas

_____

**EDWARD RANDOLPH TURNBULL, IV,**
**APPELLANT**

**V.**

**THE COMMISSION FOR LAWYER DISCIPLINE, ET. AL.**
**APPELLEES**

_____

*Appealed from the 201st Judicial District Court*
*of Travis County, Texas*
*The Honorable Karin Crump and Maya Guerra Gamble, Judges Presiding*

_____

**BRIEF OF APPELLEES. THE COMMISSION FOR LAWYER DISCIPLINE, THE CHIEF DISCIPLINARY COUNSEL, AMANDA M. KATES, JOHN S. BRANNON, DANIELA GROSZ, AND DANIEL MARTINEZ**

_____

SEANA WILLING
CHIEF DISCIPLINARY COUNSEL

MICHAEL G. GRAHAM
APPELLATE COUNSEL
OFFICE OF THE CHIEF DISCIPLINARY
COUNSEL

ROYCE LEMOINE
DEPUTY COUNSEL FOR ADMINISTRATION
OFFICE OF THE CHIEF DISCIPLINARY
COUNSEL
COMMISSION FOR LAWYER DISCIPLINE
STATE BAR OF TEXAS
royce.lemoine@texasbar.com
P.O. BOX 12487
AUSTIN, TEXAS 78711-2487
512.427.1350; FAX: 512.427.4253

## IDENTITY OF PARTIES AND COUNSEL

**PLAINTIFF/APPELLANT**
EDWARD RANDOLPH TURNBULL, IV

**COUNSEL FOR PLAINTIFF/APPELLANT**
Gaines F. West II
John "Jay" Rudinger, Jr.
West, Webb, Allbritton & Gentry PC
1515 Emerald Plaza
College Station, TX 77845-1515
Telephone: 979-694-7000
Fax: 979-694-8000
Email: gaines.west@westwebblaw.com

Judd E. Stone II
Stone Hilton PLLC
600 Congress Ave., Suite 2350
Austin, Texas 78701
Email: judd@stonehilton.com

**APPELLEES FILING THIS BRIEF**
Commission for Lawyer Discipline
Seana Willing (Chief Disciplinary Counsel)
Amanda M. Kates
John S. Brannon
Daniela Grosz
Daniel Martinez

**COUNSEL FOR APPELLEES FILING THIS BRIEF**
SEANA WILLING -Chief Disciplinary Counsel
MICHAEL G. GRAHAM - Appellate Counsel
ROYCE LEMOINE - Deputy Counsel for Administration
STATE BAR CARD NO. 24026421
Email: royce.lemoine@texasbar.com
P.O. Box 12487
Austin, Texas 78711-2487
512.427.1350; 1.877.953.5535
Fax: 512.427.4253

1

| APPELLEES: | COUNSEL FOR APPELLEES |
|---|---|
| Jenny Hodgkins | Daniel John Olds of Clark Hill, PLC, Dallas, TX<br>&<br>David N. Kitner of Strasburger & Price, LLP, Dallas, TX |
| Board of Directors of the State Bar of Texas | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Laura Gibson | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Cindy V. Tisdale | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Sylvia Borunda Firth | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Chad Baruch | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Benny Agosto, Jr. | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| David N. Calvillo | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Elizabeth Sandoval Cantu | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |

| | |
|---|---|
| Luis Cavazos | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Craig Cherry | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Jason Charbonnet | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Kelly Ann F. Clark | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Jeff Cochran | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| David C. Courreges | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Thomas A. Crosley | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Steve Fischer | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Lucy Forbes | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Gregory M. Fuller | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark |

| | Bamesberger of Vinson & Elkins, Houston, TX |
|---|---|
| August Harris, III | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Matthew J. Hill | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Forrest L. Huddleston | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Lori M. Kern | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Modinat Kotun | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Bill Kroger | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Dwight McDonald | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Carra Miller | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Lawrence Morales, II | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |

| | |
|---|---|
| Lydia Elizondo Mount | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Kimberly M. Naylor | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Laura Pratt | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Jeanine Novosad Rispoli | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Michael J. Ritter | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Audie Schumbato | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Mary L. Scott | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| John Sloan | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| D. Todd Smith | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| G. David Smith | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark |

| | Bamesberger of Vinson & Elkins, Houston, TX |
|---|---|
| Paul K. Stafford | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Alex J. Stelly, Jr. | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Nitin Sud | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Radha Thiagarajan | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Robert L. Tobey | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Aaron Z. Tobin | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Andrew Tochin | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| G. Michael Vasquez | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| Kimberly Pack Wilson | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |

| Kennon L. Wooten | Patrick W. Mizell, Brooke Ashley Noble & Emily Keller Stark Bamesberger of Vinson & Elkins, Houston, TX |
| --- | --- |

## TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL ..........................................................................1

TABLE ON CONTENTS ........................................................................................8

INDEX OF AUTHORITIES.....................................................................................11

STATEMENT OF THE CASE ...................................................................................18

STATEMENT AS TO ORAL ARGUMENT ......................................................................19

ISSUES PRESENTED.........................................................................................20

STATEMENT OF FACTS......................................................................................21

I.      Turnbull's lawsuit against the Microsoft Corporation in Harris County ......21

II.     Turnbull's threats and participation in filing disciplinary grievances
        against his opposing counsel, the Microsoft Attorneys................................25

III.    Turnbull's lawsuit against the State Bar of Texas, the CFLD, the CDC,
        BODA and 50+ volunteers and employees of the State Bar of Texas for
        a voluntary grievance committee panel's decision to dismiss the
        grievances he filed against his opposing counsel ...........................................28

SUMMARY OF THE ARGUMENTS ..............................................................................31

ARGUMENT ..................................................................................................32

I.      The Texas Attorney Disciplinary Process .......................................................33

II.     Turnbull has not suffered a "non-hypothetical injury," and he does not
        have standing to bring this lawsuit because he possesses no private
        cause of action for the dismissal of his grievances and/or complaints he
        submitted against his opposing counsel. Further, Turnbull can seek
        redress against his opposing counsel in the 190th Judicial District
        Court.. ...............................................................................................39

A. Turnbull's Erroneous Open Courts Claim ................................................43

1. Tex. Gov't Code §81.071(b)(2) does not direct any of the Appellees to find out from the volunteer members of a Summary Disposition Panel the reason(s) "why" they dismissed a grievance and then provide a complainant (like Turnbull) with such information. TRDP 2.13 specifically sets forth what type of notice is given to a complainant when a Summary Disposition Panel dismisses a complaint ................................................44

2. Tex. Gov't Code §81.0752 and TRDP 2.16 mandate that all Appellees not disclose "any type of information" to a complainant (like Turnbull), if that information was presented to a volunteer panel of a district grievance committee and dismissed pursuant to TRDP 2.13 ................................................47

B. Turnbull's Erroneous Due Course of Law Claim ................................51

C. Turnbull's Frivolous Equal Protection Claim ................................53

III. Turnbull sets forth no plausible claim against Appellees. And all of his allegation's center around his dissatisfaction with the volunteer grievance committee panel's "decision" to dismiss his "fully investigated" Complaints ................................................57

A. Turnbull's allegations against Kates, Grosz, and Martinez ................57

B. Turnbull's allegations against the CFLD ................................59

C. Turnbull's allegations against the CDC (Willing) and Brannon ..............60

D. Turnbull's additional false allegations to the trial court ................60

IV. Because Appellees are obligated to follow the TRDPs, and Turnbull's own supporting documents show that none of the Appellees committed a "ministerial, ultra vires" act, Appellees are entitled to protection under Sovereign Immunity and/or the immunity protections provided them under TRDP 17.09 ................................................67

A.      The CFLD and its members are entitled to Sovereign Immunity and/or immunity protections under TRDP 17.09...................................67

B.      Willing, Kates, Brannon, Grosz, and Martinez, are entitled to Sovereign Immunity and/or the immunity protections provided them under TRDP 17.09, because they complied with all rules.........71

CONCLUSION AND PRAYER: TURNBULL'S LAWSUIT IS A CLASSIC EXAMPLE OF A LITIGANT ATTEMPTING TO USE THE MEDIA AND OUR TEXAS COURT SYSTEM TO BYPASS THE PROCESS THAT OUR TEXAS LEGISLATURE HAS ALREADY SET UP FOR LICENSED ATTORNEYS TO PROPOSE CHANGES TO THE TDRPC AND TRDPS (SEE SUPP CR 1620-1621). AND THE TRIAL COURT CORRECTLY FOUND THAT TURNBULL'S LAWSUIT WAS FRIVOLOUS.................................................................................................................73

CERTIFICATES OF SERVICE AND COMPLIANCE .........................................................75

CASES                                                                                                    PAGE

*Allegheny Pittsburgh Coal Co. v. Commission of Webster Cty.,*
        488 U.S. 336 (1989)..............................................................................54

*Banales v. Jackson,*
        601 S.W.2d 508 (Tex. Civ. App. – Beaumont 1980) ....................................50

*Bell v. Low Income Women,*
        95 S.W.3d 253 (Tex. 2002) .................................................................53

*City of Dallas v. Sanchez,*
        494 S.W.3d 722 (Tex. 2016)(per curiam) ......................................32

*City of El Paso v. Heinrich,*
        284 S.W.3d 366 (Tex. 2009) ...............................................67, 71

*Crampton v. Farris,*
        596 S.W.3d 267 (Tex.App. – Houston [1st Dist.] 2019)........................69, 72

*Dailey v. Thorpe,*
        445 S.W.3d 785 (Tex. App. – Houston [1st Dist.] 2014, no pet.).................32

*Daves v. State Bar of Texas,*
        691 S.W.2d 784 (1985).........................................................50

*Dep't of Transp. v. Jones,*
        8 S.W.3d 636 (Tex. 1999) .......................................................67

*Dep't of Transp. v. Sefzik,*
        355 S.W.3d 618 (Tex. 2011)(per curiam) ....................................69

*Doe v. Board of Dirs. Of State Bar of Tex.,*
        No. 03-15-00007-CV, 2015 WL 6656216
        (Tex.App. – Austin Oct. 27, 2015, pet. denied)(mem. op).....................46, 56

*Eichelberger v. Eichelberger,*
        582 S.W.2d 395 (Tex. 1979) ...............................................33, 70

*GoDaddy.com, LLC v. Toups,*
    429 S.W.3d 752 (Tex.App. – Beaumont 2014, pet. denied) .........................32

*Hall v. McRaven,*
    508 S.W.3d 232 (Tex. 2017) ......................................................................67

*Harris Cnty. v. Sykes,*
    136 S.W.3d 635 (Tex. 2004) ......................................................................69

*Howell v. Texas Workers' Comp. Comm'n,*
    143 S.W.3d 416 (Tex.App. – Austin 2004, pet. denied) ..............................44

*Imbler v. Pachtman,*
    424 U.S. 409 (1976)..............................................................................69, 70

*In re Nolo Press/Folk Law, Inc.,*
    991 S.W.2d 768 (Tex. 1999) ......................................................................33

*Johnson v. Rodriguez,*
    110 F.3d 299 (5th Cir. 1997) ....................................................................43

*Lefebure v. D'Aquilla,*
    15 F.4d 650 (5th Cir. 2021) .......................................................................43

*Leonard v. Abbott,*
    171 S.W.3d 451 (Tex.App. – Austin 2005, pet. denied) ..............................53

*Linda R.S. v. Richard D.,*
    410 U.S. 614 (1973)..............................................................................41, 43

*Martinez v. State Bar of Texas,*
    797 F.App'x. 167 (5th Cir. 2020)...............................................41, 43, 51, 68

*Matzen v. McLane,*
    659 S.W.3d 381 (Tex. 2021) ......................................................................67

*Missouri Pacific Railroad Co. v. Brownsville Navigation District,*
    453 S.W.2d 812 (Tex. 1970). .....................................................................67

12

*Peeler v. Hughes & Luce,*
909 S.W.2d 494 (Tex. 1995) ........................................................................44

*Reaves v. City of Corpus Christi,*
518 S.W.3d 594 (Tex.App. – Corpus Christi 2017, no pet.)........................32

*Rosales v. Comm'n for Lawyer Discipline,*
No. 03-18-00725-CV, 2020 WL 1934815
(Tex.App. – Austin Apr.22, 2020, no pet.)(mem. op.)...........................41, 43

*Sarfo v. Comm'n for Lawyer Discipline,*
No. 03-19-00146-CV, 2021 WL 746052
(Tex.App. - Austin Feb. 26, 2021, no pet.)(mem.op)....................................63

*State Bar of Tex. v. Gomez,*
891 S.W.2d 243 (Tex. 1994) .......................................................................56

*Tex. Dep't of Health Serv. v. Holmes,*
294 S.W.3d 328 (Tex. App. – Austin 2009, pet denied) ..............................68

*Univ. of Tex. Med. School at Houston v. Than,*
901 S.W.2d 926 (Tex. 1995) .......................................................................51

*Village of Willowbrook v. Olech,*
528 U.S. 562 (2000)....................................................................................53

*Webster v. Comm'n for Lawyer Discipline,*
No. 23-0694, 2024 WL 5249494 (Tex. Dec. 31, 2024) ..................38, 42, 45

*Willie v. Comm'n for Lawyer Discipline,*
No. 14-10-00900-CV, 2011 WL 3064158
(Tex.App. – Houston [14th Dist.] July 26, 2011, pet. denied)(mem. op.) ....68

*Wooley v. Schaffer,*
447 S.W.3d 71 (Tex.App. – Houston [14th] 2014, pet. denied) ...................32

*Yaselli v. Goff,*
12 F.2d 396 (1926) ......................................................................................70

13

STATUTES AND RULES                                                                PAGE

Tex. Const. Art. I, § 13. ................................................................................44
Tex. Const. Art. I, § 19. ................................................................................51
Tex. Const. Art. II, Sec. 1 .......................................................................33, 70
Tex. Const. Art. V, Sec. 1 ..............................................................................33
Tex. Const. Art. V, Sec. 3 ..............................................................................33

Fed. R. Civ. P. 12(b)(6) ..................................................................................32

Tex. Gov't Code § 81.011(a) ....................................................................18, 31
Tex. Gov't Code § 81.011(b) ...................................................................34, 45
Tex. Gov't Code § 81.011(c) ..........................................................................45
Tex. Gov't Code § 81.072 .......................................................................34, 66
Tex. Gov't Code § 81.072(b)(2) ...............................................44, 45, 46, 47, 58
Tex. Gov't Code § 81.0752 ........................................................47, 48, 50, 51
Tex. Gov't Code § 81.076(b) ...................................................................18, 31
Tex. Gov't Code § 81.076(g) .................................................................46, 54, 58

Tex. Gov't Code § 81.0875 ............................................................................74
Tex. Gov't Code § 81.0875(c) ..................................................................48, 60

Tex. R. Civ. P. 91a .............................................................................30, 31, 32

Tex. Rules Disciplinary P. R. 2.02 .................................................................36
Tex. Rules Disciplinary P. R. 2.10 ..............................................35, 48, 50, 55, 71
Tex. Rules Disciplinary P. R. 2.10(A) .......................................................35, 40
Tex. Rules Disciplinary P. R. 2.10(B) .............................................................35
Tex. Rules Disciplinary P. R. 2.12 ...........................................35, 36, 39, 48, 55
Tex. Rules Disciplinary P. R. 2.12(F) .............................................................63
Tex. Rules Disciplinary P. R. 2.12(G) ............................................................55
Tex. Rules Disciplinary P. R. 2.13 ...................... 27, 36-40, 44, 46-49, 53, 56-63
Tex. Rules Disciplinary P. R. 2.14 ...................... 27, 37, 39, 54, 55, 59, 66, 68, 72
Tex. Rules Disciplinary P. R. 2.14(A) ........................................................59, 68
Tex. Rules Disciplinary P. R. 2.15 .......................... 27, 37, 55, 56, 60, 64, 66, 71
Tex. Rules Disciplinary P. R. 2.16 ...................... 29, 36, 47, 48, 50, 51, 55, 56, 72
Tex. Rules Disciplinary P. R. 5.01 ..................................................................58
Tex. Rules Disciplinary P. R. 5.02(C) .............................................................63

Tex. Rules Disciplinary P. R. 5.02(D) .......................................................37, 55, 60

Tex. Rules Disciplinary P. R. 17.09 .......................................... 20, 31, 46, 67, 69-72

Tex. Disciplinary R. Prof'l Conduct R. 1.06(b)(2) ...........................................63, 64

Tex. Disciplinary R. Prof'l Conduct R. 4.04(b) ...................................................26

Tex. Disciplinary R. Prof'l Conduct Preamble, ¶15 .............................................41

No. 15-24-00095-CV

_____

In The Court of Appeals
Fifteenth District of Texas
Austin, Texas

_____

EDWARD RANDOLPH TURNBULL, IV,

APPELLANT

V.

THE COMMISSION FOR LAWYER DISCIPLINE, ET AL.

APPELLEES

_____

*Appealed from the 201st Judicial District Court
of Travis County, Texas
The Honorable Karin Crump and Maya Guerra Gamble, Judges Presiding*

_____

BRIEF OF APPELLEES. THE COMMISSION FOR LAWYER DISCIPLINE, THE CHIEF
DISCIPLINARY COUNSEL, AMANDA M. KATES, JOHN S. BRANNON, DANIELA
GROSZ, AND  DANIEL MARTINEZ

_____

TO THE HONORABLE FIFTEENTH COURT OF APPEALS:

Appellees, the Commission for Lawyer Discipline ("CFLD"), the Chief

Disciplinary Counsel ("CDC" and/or Seana Willing), Amanda M. Kates, John S.

Brannon, Daniela Grosz, and Daniel Martinez, submit this brief in response to

Appellant's Brief. For clarity, this brief refers to Appellant as "Turnbull" and/or

"Appellant". This brief designates record references as CR or Supp CR __ (clerk's

16

record or supplemental clerk's record, by volume and page), RR MTD, p._____ (reporter's record for the Motion to Dismiss hearing held on July 29, 2024); RR PTJ (July 2024), p. ____(reporter's record for the Plea to the Jurisdiction hearing held on July 2, 2024); or RR PTJ (Oct. 2024), p. ___(reporter's record for Plea to the Jurisdiction hearing held on October 26, 2024). References to the Appellant's brief are labeled Apt. Br., ___ followed by the relevant page number(s). References to rules are references to the Texas Disciplinary Rules of Professional Conduct[1] ("TDRPC") or the Texas Rules of Disciplinary Procedure[2] ("TRDP" or the "Rules") unless otherwise noted.

---

[1] *Reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. A (West 2023).

[2] *Reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G. app. A-1 (West 2023).

## STATEMENT OF THE CASE

*Type of Proceeding*:          District Court

*Plaintiff/Appellant*:          Edward Randolph Turnbull, IV.

*Defendants/Appellees*:          The Commission for Lawyer Discipline, a standing committee of the State Bar of Texas, which is an agency of the Texas Judicial department. See TEX. GOV'T CODE §§81.011(a) and 81.076(b) (West 2023). The Chief Disciplinary Counsel (Seana Willing), and her current/former employees Amanda M. Kates, John S. Brannon, Daniela Grosz, and Daniel Martinez.

*Trial Judge:*          The Honorable Karin Crump (former presiding judge of the 250th Judicial District Court[3]) and the Honorable Maya Guerra Gamble (presiding judge of the 459th Judicial District Court)

*Judgment or Order*
*Appealed:*          On August 6, 2024, the district court dismissed Turnbull's claims against the above-listed Appellees as frivolous and with prejudice. [CR 1526, 1528, 1530].

---

[3] Now-Justice Crump was elected to the Third Court of Appeals in 2024.

## STATEMENT AS TO ORAL ARGUMENT

Appellant has requested oral argument. Appellees do not believe oral argument will assist the Court in making its decision in this case due to the existence of well-established precedent. However, should this Court grant Appellant's request for oral argument, Appellees request the opportunity to appear and argue.

# ISSUES PRESENTED

I.    Appellant is not a "party" that is entitled to relief in a Disciplinary Proceeding initiated by grievances he filed against his opposing counsels in ongoing litigation, and he has not suffered a "non-hypothetical injury." The district court correctly ruled that Appellant does not have standing to sue Appellees and that his lawsuit was **frivolous** and should be dismissed **with prejudice.**

II.   The Commission for Lawyer Discipline is a standing committee of the State Bar of Texas and is entitled to Sovereign Immunity protection and/or the protections afforded its members under Rule 17.09 of the Texas Rules of Disciplinary Procedure. The Chief Disciplinary Counsel (Seana Willing), Amanda Kates, John Brannon, Daniela Grosz, and Daniel Martinez, are all current/former employees of the State Bar of Texas, and are all entitled to protection under Sovereign Immunity and/or the immunity protections afforded to them under Rule 17.09 of the Texas Rules of Disciplinary Procedure.

# STATEMENT OF FACTS

## I. Turnbull's lawsuit against the Microsoft Corporation in Harris County.

On October 25, 2019, Appellant, Edward Randolph Turnbull, IV, a Texas licensed attorney, and his criminal defense firm, Turnbull Legal Group ("TLG"), filed a lawsuit against the Microsoft Corporation in the 190th Judicial District Court of Harris County, Texas. [CR 328, 451, 581]. Turnbull's lawsuit alleged Microsoft had violated the Deceptive Trade Practices Act ("DTPA") and converted TLG's client files by denying him access to TLG's files that he stored on his Microsoft OneDrive account. Turnbull also requested a Temporary Restraining Order ("TRO") and temporary injunction to enjoin Microsoft from blocking his access to TLG's files and to safeguard all data belonging to TLG. [CR 451, 494, 573-645, 742].

On October 29, 2019, the court granted Turnbull's request for an *ex parte* TRO, enjoining Microsoft from blocking his access to TLG's files, and setting a hearing for his request for a temporary injunction pending arbitration. [CR 880-882]. Then on November 11, 2019, the parties agreed to extend the TRO until a hearing on Turnbull's temporary injunction request. [CR 884-885]. While Microsoft agreed it would "return all data" associated with Turnbull's OneDrive account to him, Turnbull agreed to remove the TRO provision requiring Microsoft to restore TLG's access to said account. [CR 884].

Prior to February 2020, Turnbull admitted that, at times, the discussions between he and Microsoft's attorneys Olga Lovett and Rene Trevino (the *Microsoft Attorneys*") had become "a bit heated." [CR 890]. And on February 6, 2020, Turnbull, his attorneys Jeremy Doyle and Solace Southwick, and the *Microsoft Attorneys* all participated in a meeting (the "February 6th Meeting") to see if they could come to some kind of resolution before the February 17, 2020, temporary injunction hearing. [CR 941]. The February 6th Meeting was apparently unsuccessful.

The next day Microsoft filed its Defendant's Answer and Affirmative Defenses Subject to Its Motion to Compel Arbitration and Stay this Litigation. [CR 260-265]. Microsoft's answer asserted that "Turnbull's direct actions of sharing or making public images of child sexual exploitation imagery ("CSEI")," violated the terms of the Microsoft Service Agreement (MSA), "which resulted in the suspension and termination of Turnbull's OneDrive account." [CR 262]. Subsequently, on February 14, 2020, Turnbull filed Plaintiff's Verified First Amended Petition for Temporary Restraining Order and Temporary Injunction Pending Arbitration. [CR 311- 321].

On February 17, 2020, the court held a hearing on Turnbull's request for a temporary injunction seeking access to TLG's files on his Microsoft OneDrive account. [CR 54-185]. During the hearing, the court was presented with testimony

and documentation that showed Microsoft's PhotoDNA review of Turnbull's OneDrive account had flagged two images as possible CSEAI (Child Sexual Exploitation and Abuse Imagery) material. [CR 120-126]. Turnbull also testified and acknowledged that he had previously informed Microsoft that some content on his OneDrive account "likely violated" the MSA; and that he believed the images at issue related to a "promotion of prostitution case" that involved "some juveniles." [CR 72-73, 83-86, 90, 104-106, 107-109 (testimony references to Exhibit 9 CR 1318-1319), 126-129, 570-571, 839, 1057, 1318-1319].

On February 25, 2020, the court granted Turnbull's injunction request in part - ordering Microsoft to segregate and remove the two CSEAI images and return Turnbull's files to him in three days. [CR 1028-1030]. Shortly thereafter, Turnbull initiated a suit before the American Arbitration Association ("AAA") seeking over $75,000 in damages against Microsoft premised on his claims that: (1) Microsoft delayed response in providing him access to TLG client files; and (2) that Microsoft (not specifically the *Microsoft Attorneys* by name) threatened TLG at the February 6th Meeting. [CR 291-309]. In that suit, Turnbull further alleged that Microsoft told TLG "that if it continued its effort to try and get its case files back by pursuing injunctive relief, there would be a criminal investigation, involvement from the State Bar and public pleadings that alleged TLG's and Turnbull's sharing and making public child exploitation images ..." [CR 291-309]. Turnbull also requested the

AAA award him "mental anguish damages" against Microsoft related to said claims. [CR 308-309].

Subsequently, Microsoft responded on July 22, 2020, by filing Defendant's First Amended Answer, Affirmative Defenses, Counterclaims for Declaratory Judgment, and Request for Injunctive Relief in the state district court case. [CR 340-356]. Microsoft's response again asserted Turnbull had violated the MSA by sharing or making public CSEAI imagery from his OneDrive account and thus possessed no cause of action against Microsoft. [Id.]. Microsoft also argued it was entitled to relief against Turnbull on its counter-claims and sought affirmative relief against Turnbull for his violation of the "Code of Conduct" in the MSA. [CR 345]. Further, Microsoft requested an Anti-Arbitration injunction premised on its claim that Turnbull waived his right to have the matter decided by arbitration by the filing of his lawsuit and request for injunctive relief. [CR 353].

The trial court held a hearing on Microsoft's request for an Anti-Arbitration Injunction on August 6, 2020. On August 7, 2020, the court stayed the arbitration proceeding that Turnbull had initiated, and allowed both parties 60 days to conduct discovery. [CR 366-367]. On December 16, 2020, the court ultimately granted Microsoft an Anti-Arbitration injunction, after both parties were allowed to present their arguments, and enjoined the parties "from submitting [the] case to Arbitration." [CR 369].

On December 23, 2020, Turnbull appealed that adverse ruling. Then, despite not filing any previous grievances related to his interaction with the *Microsoft Attorneys* during the February 6th Meeting (a year earlier), Turnbull hired attorney Gaines West ("West"), former chair of the Board of Disciplinary Appeals ("BODA"), on or about January 11, 2021, who then sent a threatening letter to the *Microsoft Attorneys*. [CR 1036-1037]. That letter implied that the *Microsoft Attorneys* had committed professional misconduct during the February 6th Meeting and stated that Turnbull would file grievances against them with the CDC's Office if they did not respond to his letter. [CR 1036-1037]. Turnbull's state court lawsuit against Microsoft is still pending following the First Court of Appeal's reversal of the Anti-Arbitration Injunction.[4]

## II. Turnbull's threats and participation in filing disciplinary grievances against his opposing counsel, the Microsoft Attorneys.

On or about February 10, 2021, Turnbull followed through on his threat and had West file two grievances against the *Microsoft Attorneys* on his behalf while his appeal was pending in the First Court of Appeals. [Supp CR 6-20]. In fact, between February 2020 and September 2022, Turnbull filed at least six (6) grievances against the *Microsoft Attorneys* and submitted over 500 pages of documents - which included West's emails and letters advocating for the CDC and the Summary

---

[4] See *Turnbull Legal Group, PLLC v. Microsoft Corp.,* No. 01-20-00851-CV, 2022 WL 14980287 (Tex. App. – Houston [1st Dist.] 2022).

25

Disposition Panel to find "just cause" on Turnbull's claims that the *Microsoft Attorneys* committed professional misconduct during the February 6th Meeting. [CR 804-1040, 1261-1415]; [Supp CR 4-163].

As to Turnbull's first two grievances – which were received by the CDC on or about February 10, 2021, and upgraded to the status of Complaints on May 13, 2021, by BODA - Turnbull claimed the *Microsoft Attorneys* verbally threatened him "solely to gain an advantage" in the lawsuit that Turnbull filed against Microsoft (in violation of TDRPC 4.04(b)) during the February 6th Meeting, **a year earlier**. [Supp CR 4-21, 195, 197, 202-718]. He also claimed they set forth a purportedly false statement in their answer to his lawsuit by asserting "Turnbull's OneDrive account shared or made public images of child sexual exploitation imagery…"[5] [Supp CR 98].

However, Turnbull only produced documentation showing *his* threat against the *Microsoft Attorneys* on January 11, 2021, and no evidence that the *Microsoft Attorneys* ever made a report to law enforcement or filed a grievance against Turnbull with the CDC's office. [Supp CR 87-88]. In fact, on February 8, 2021,

---

[5] A fact that is still in dispute before the 190th Judicial District Court, and that Turnbull seemed to concede in his testimony during the Temporary Injunction hearing on February 17, 2020. [CR 84-90]. In fact, the witness testimony presented during the trial court's hearing on February 17, 2020, seems to support the basis for Microsoft's pleadings of which Turnbull complains. [CR 72-73, 83-86, 90, 104-106, 107-109 (testimony references to Exhibit 9 at CR 1318-1319), 126-129, 570-571, 839, 1057, 1318-1319].

Turnbull represented to the First Court of Appeals, in his appeal of the 190th Judicial District's decision granting Microsoft's request for an Anti-Arbitration Injunction, that Microsoft **did not** file (or participate in filing) criminal charges and/or a grievance against him with the State Bar of Texas, and only filed responsive pleadings to Turnbull's lawsuit – which Turnbull still contends contained a false statement related to the "child exploitation images." [CR 589]. Additionally, in his Brief to the First Court of Appeals, Turnbull's allegations were made against Microsoft, and not the *Microsoft Attorneys* individually. [CR 589].

After the CDC's investigation of Turnbull's Complaints turned up over 600 pages of documents and five (5) contravening notarized Declarations by five (5) individual attorneys that were present during the February 6th Meeting, the CDC determined her investigation was complete and assigned Turnbull's Complaints to a Summary Disposition Panel for their final review and determination as to whether the Complaints should proceed pursuant to TRDP 2.14 and TRDP 2.15, or be dismissed, pursuant to TRDP 2.13. [CR 207-552, 556-650]; [Supp CR 4-163, 821-825, 1240-1248]. Turnbull was notified that his Complaints had been assigned to a volunteer Summary Disposition Panel of the District 4 Grievance Committee on or about August 13, 2021. [CR 788, 790].

Ultimately, the volunteer members of the Summary Disposition Panel "reviewed all the evidence submitted and obtained during the investigation,"

27

including the documentation submitted by Turnbull and decided that Turnbull's Complaints should not proceed pursuant to the TRDPs. [CR 775-777, 779-780]. Such documentation included Turnbull's testimony before the 190th Judicial District Court (on February 17, 2020) and the (5) declarations referenced above that averred no threats were made towards Turnbull during the February 6th Meeting. [CR 188-205, 207-241]. Turnbull was notified of the panel's decision on or about September 21, 2021. [CR 775-777, 779-780]. Additionally, Turnbull's subsequent grievances were classified as inquiries and affirmed as such by BODA following Turnbull's classification appeal. [CR 1247-1256].

III. **Turnbull's ensuing lawsuit against the State Bar of Texas, the CFLD, the CDC, BODA and 50+ volunteers and employees of the State Bar of Texas for a voluntary grievance committee panel's decision to dismiss the grievances he filed against his opposing counsel.**

As mentioned in Appellees' dismissal motions, Turnbull filed this lawsuit (the "Travis County Lawsuit") after his identical federal lawsuit against: (1) the State Bar of Texas; (2) the CFLD; (3) the CDC; and (4) more than fifty (50) individuals who are current or former elected Directors, Officers, volunteer committee members, or employees of the State Bar of Texas, was dismissed on February 27, 2024. [Supp CR 1611-1617, 1861-1867, 2111-2117]. In Turnbull's federal lawsuit, he similarly claimed that: 1) he suffered an "injury" because his Complaints against the *Microsoft Attorneys* were dismissed; 2) Appellees violated his constitutional rights to equal

protection and free speech; and 3) Appellees violated his state due process rights. [Supp CR 1623-1696]. Turnbull also *falsely* claimed that each Appellee was involved in the "decision" to dismiss his Complaints despite acknowledging that his Complaints were dismissed by a Summary Disposition Panel of the District 4 Grievance Committee on or about September 21, 2020 [Supp CR 1653, 1674]. To date, Turnbull has not sued any volunteer member of the Summary Disposition Panel that actually made the "decision" to dismiss his Complaints.

In the Travis County Lawsuit, Turnbull sued all of the same Appellees that he sued in his federal lawsuit, except former CDC Administrative Attorney, Timothy Baldwin, after Turnbull was involved in an incident that took place at Baldwin's residence. [Supp CR 1619-1621]. Apart from his claim that he believes TRDP 2.16, as promulgated by the Texas Supreme Court, is *unconstitutional*, Turnbull also similarly alleged that each Appellee made the ultimate "decision" to dismiss the two Complaints and four grievances that Turnbull filed against his opposing counsels between 2020-2022. [CR 30]. And in fact, despite attaching documentation showing specifically that his Complaints against the *Microsoft Attorneys* were dismissed by a Summary Disposition Panel of the District 4 Grievance Committee, and that the CDC (herself) classified his subsequent grievances as inquiries that eventually were affirmed by BODA, Turnbull frivolously claimed four CDC attorneys (Kates, Brannon, Grosz and Martinez) actually "made the determination to send Mr.

29

Turnbull's Grievances to the SDP…" contradicting his own exhibits attached to his pleadings.[6] [CR 27, 775-777, 779-780]; [Supp CR 1681].

On June 24 & 26, 2024, Appellees each filed a Rule 91a dismissal motion requesting that the trial court dismiss Turnbull's Travis County Lawsuit <u>as frivolous</u>. [Supp CR 1585-1821, 1835-1858, 2085-2109]. After hearing argument from all Appellees, the Honorable Karin Crump (then-presiding judge of the 250th Judicial District Court[7]) entered an order dismissing Turnbull's lawsuit against the Appellees "**as frivolous and with prejudice.**" [CR 1526, 1528, 1530].

---

[6] Interestingly, even in his Appellant brief before this court, Turnbull admits "that the CDC placed the grievances on a summary disposition docket rather than referring the grievances to an investigatory hearing panel…" – not Kates, Brannon, Grosz, Martinez, or any other named Appellee in his lawsuit, and that Brannon merely notified Turnbull of such on August 16, 2021. [Apt. Br., 2].

[7] See FN 3, *supra*.

## SUMMARY OF THE ARGUMENTS

The district court correctly held that Turnbull's lawsuit against Appellees was <u>frivolous</u> and should be dismissed pursuant to Rule 91a of the Texas Rules of Civil Procedure. The district court's decision rested on well-established precedent, which included authority holding that Appellees are obligated to follow the TRDPs (as promulgated by the Texas Supreme Court); and that a grievant does not possess a constitutional right to compel the State Bar of Texas to: (1) investigate a grievance against a Texas licensed attorney, or to do so in any particular manner; or (2) to render a decision to his/her liking.

Alternatively, the State Bar of Texas is an agency of the judicial branch of the State of Texas and the CFLD is a standing committee of the State Bar. TEX. GOV'T CODE ANN. §81.011(a) and §81.076(b). Both are entitled to sovereign immunity. Willing, Kates, Brannon, Grosz, and Martinez are current and/or former employees of the State Bar and also entitled to sovereign immunity as well as the immunity protections afforded them pursuant to TRDP 17.09.

For the reasons set forth below, the trial court did not err in granting Appellees' dismissal motions. The purpose of a Rule 91a motion is to dismiss a cause of action on the grounds that it has no basis in law or fact. *Dailey v. Thorpe*, 445 S.W.3d 785, 788 (Tex.App.—Houston [1st Dist.] 2014, no pet.). A cause of action has no basis in law if the allegations, taken as true, together with inferences reasonably drawn from them, do not entitle the claimant to the relief sought. *Id*. A cause of action has no basis in fact if no reasonable person could believe the facts pleaded. *Id.*

A Rule 91a dismissal motion is "analogous" to a dismissal motion brought in federal court pursuant to Rule 12(b)(6) of the Texas Federal Rules of Civil Procedure, in that the pleadings should contain "enough facts to state a claim of relief that is plausible on its face." *Wooley v. Schaffer*, 447 S.W.3d 71, 75-76 (Tex.App. – Houston [14th] 2014, pet. denied); *GoDaddy.com, LLC v. Toups*, 429 S.W.3d 752, 754 (Tex.App. – Beaumont 2014, pet. denied). The pleadings must also allege sufficient facts to invoke a waiver of governmental immunity. *Reaves v. City of Corpus Christi*, 518 S.W.3d 594, 599 (Tex.App. – Corpus Christi 2017, no pet.) (citing *City of Dallas v. Sanchez*, 494 S.W.3d 722, 725 (Tex. 2016)(per curiam)).

Here, Turnbull has presented no grounds to support a plausible cause of action against Appellees and/or sufficient facts to show sovereign immunity has been

32

waived to allow him to sue them. Turnbull's accusations against Appellees are also implausible, frivolous, and brought in bad faith. As such, Appellees contend that a *de novo* review of the trial court's dismissal of Turnbull's lawsuit, will show that Turnbull lacked standing to bring his claims and that no action/inaction on the part of Appellees warrants his persistent attempts at retribution through misuse/abuse of the legal system.

## I.    The Texas Attorney Disciplinary Process.

The Texas Supreme Court's authority to regulate the practice of law is an inherent power derived from the Texas Constitution's delegation of the judicial power of the Government of the State of Texas to the judiciary and the Court. TEX. CONST. ART. II, SEC. 1 & ART. V, SEC. 1 & 3; *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 397-399 (Tex. 1979); *In re Nolo Press/Folk Law, Inc.*, 991 S.W.2d 768, 769-770 (Tex. 1999). As that Court has explained, "The inherent powers of a court are those which it may call upon to aid in the exercise of its jurisdiction, in the administration of justice, and in the preservation of its independence and integrity," and such power, "[h]as existed since the days of the Inns of Court in common law English jurisprudence." *Eichelberger*, 582 S.W.2d at 398-399 (citations omitted). In 1939, the Texas Legislature first passed the State Bar Act, to assist the Texas Supreme Court in this endeavor – the current version of the State Bar act makes this

clear.[8] To accomplish this, the Texas Supreme Court has promulgated the TDRPCs and the TRDPs, setting forth both the standards of conduct to which all Texas attorneys are to be held (the TDRPCs) and the procedural rules by which attorney disciplinary actions are to be governed (the TRDPs). And despite Appellant's contentions, the Texas Supreme Court is (and always has been) the sovereign authority inherently tasked with the regulation of the practice of law in Texas, including through the oversight and discipline of Texas-licensed attorneys - not Appellees (certainly, not of their own accord). [Apt. Br., 11]. Through the State Bar Act the legislature has assisted the Court in that endeavor by providing further resources to the Court and passing administrative control of the State Bar to the Court for, amongst other things, establishing the disciplinary and disability procedures. TEX. GOV'T CODE §81.072. [Apt. Br., 11].

Once a grievance is filed in Texas, the CDC <u>must</u> determine whether to classify the grievance as a "Complaint" (a writing that alleges conduct that, if true, constitutes professional misconduct and is brought by a person identified under TRDP 1.06(G)(2)), or an "Inquiry" (a writing that alleges conduct that, even if true,

---

[8] Contrary to Turnbull's argument that the Texas Legislature "authorized disciplinary actions against attorneys," the Texas Supreme Court has always had such authority, and the State Bar was created to assist the Supreme Court of Texas in its exclusive authority to regulate the practice of law, "This chapter is in aid of the judicial department's powers under the constitution to regulate the practice of law, and not to the exclusion of those powers." [Apt. Br., 18]; TEX. GOV'T CODE §81.011(b)-(c).

does not constitute professional misconduct or is not brought by a person identified under TRDP 1.06(G)(2)). TEX. RULES DISCIPLINARY P. R. 2.10. If the CDC determines that the allegations do not constitute professional misconduct, the writing is classified as an Inquiry. TEX. RULES DISCIPLINARY P. R. 2.10. A complainant has the right to appeal the classification of a grievance as an Inquiry to BODA. TEX. RULES DISCIPLINARY P. R. 2.10(A). A respondent, likewise, has a right to appeal the classification of a grievance as a "Complaint." TEX. RULES DISCIPLINARY P. R. 2.10(B).

Grievances classified by the CDC as an Inquiry but overturned on appeal before BODA, are upgraded for investigation. In those instances, or in the instance where a respondent attorney unsuccessfully appeals a Complaint classification to BODA pursuant to TRDP 2.10(B), the respondent attorney <u>must</u> respond to the allegations of misconduct within thirty days of receiving notice of the allegations. TEX. RULES DISCIPLINARY P. R. 2.10 (emphasis added). Pursuant to TRDP 2.12, the CDC is then mandated to investigate all Complaints.

After receiving the response from a respondent attorney, the CDC is required to: (1) determine whether Just Cause exists in the evidence obtained, and send the respondent attorney a notice of the allegations and an election notice; **or** (2) make an initial determination that there is no Just Cause and <u>send the matter to a Summary Disposition Panel (a panel made up of members of a district grievance committee</u>

35

appointed in accordance with TRDP 2.02), for the Panel's determination as to whether the Complaint should be dismissed or proceed to litigation.[9] Further, in the course of its investigation the CDC may also (1) issue investigatory subpoena(s); and/or (2) set the matter before an Investigatory Hearing Panel to assist her investigation and to help her make the Just Cause/No Just Cause determination, though neither of those additional investigatory steps is *required* under the TRDPs.[10]

In those cases that go before a Summary Disposition Panel of the appropriate district grievance committee, that panel is presented with all "information, documents, evidence, and argument deemed necessary and appropriate…" to make a final determination. TEX. RULES DISCIPLINARY P. R. 2.13. That final determination is not made by the CFLD, the CDC, or a CDC employee, it is made by the Summary Disposition Panel. And the CDC and her employees are mandated by the Texas Supreme Court not to disclose any of the "information, proceedings, hearing transcripts, and statements presented to the panel of the district grievance committee" to anyone other than the CDC. TEX. RULES DISCIPLINARY P.R. 2.16; *see also* TEX. GOV'T CODE §81.0752.

Here, Turnbull's first two grievances against his opposing counsel were upgraded to the status of Complaints, on or about May 13, 2021, and investigated by

---

[9] TEX. RULES DISCIPLINARY P. R. 2.02 and 2.13

[10] TEX. RULES DISCIPLINARY P. R. 2.12

the CDC. [Supp CR 195, 197]. As Turnbull admits in his lawsuit, those Complaints were presented to a Summary Disposition Panel of the District 4 Grievance Committee and dismissed by that panel on September 21, 2021. [CR 775-776, 779-780]. That is, pursuant to TRDP 2.13, the volunteer members of the Summary Disposition Panel reviewed all the information that Turnbull and his attorney presented to the CDC, and decided Turnbull's Complaints *should not* "proceed in accordance with Rule 2.14 and Rule 2.15" of the TRDPs. TEX. RULES DISCIPLINARY P. R. 2.13. And Turnbull received notice of their decision, in compliance with TRDP Rule 2.13. [CR 775-776, 779-780].

Additionally, in the underlying lawsuit Turnbull has not plausibly alleged that any named Appellee failed to comply with any of the TRDPs, as promulgated by the Texas Supreme Court. And any argument that a named Appellee in this lawsuit could have made the ultimate "decision" to dismiss Turnbull's Complaints – amounting to some form of "selective prosecution" (as alleged in Turnbull's original petition (CR 17 and 25)) – is refuted by Turnbull's own pleadings and the TRDPs, which give the CDC and/or her employees no authority, whatsoever, to dismiss a Complaint. TEX. RULES DISCIPLINARY P. R. 2.13 and 5.02(D).

While Turnbull appears to argue that the assignment of his Complaints to a Summary Disposition Panel, instead of an Investigatory Hearing Panel, somehow amounted to an "apparent double standard", because "Sidney Powell" had a

"scheduled Investigatory Hearing," Turnbull's own supporting documents attached to this lawsuit show how such argument **is mere conjecture**. [CR 19]. In fact, Turnbull failed to present any pleading or documentation identifying the "similarly-situated" complainants he refers to, or showing any similarities between himself and complainants who filed the grievances against "Attorney General Ken Paxton, Brent Webster, and Sidney Powell." He also failed to notify the trial court that the CDC actually made the same initial classification decision with his grievances/Complaints, as they did in the cases involving the "Attorney General Ken Paxton," and "Brent Webster." *Webster v. Commission for Lawyer Discipline,* No. 23-0694, 2024 WL 5249494, at *2 (Tex. Dec. 31, 2024).

Further, Turnbull has not - and cannot - set forth any pleading showing that: (1) the CDC did not finish her investigation of Turnbull's Complaints at the time they were assigned to the Summary Disposition Panel; (2) Turnbull's lawsuit against the Microsoft Corporation has concluded; and/or (3) the presiding judge (in Turnbull's lawsuit against Microsoft) referred **any** of Turnbull's allegations to the CDC, or has entered an order finding that the *Microsoft Attorneys* filed responsive pleadings in his lawsuit that contained factual misrepresentations, as actually occurred in the "Sidney Powell" matter he references. [Supp CR 1698-1807]. In fact, such would be implausible because Turnbull's underlying lawsuit is still pending, and his own counsel admitted that Turnbull's complaints against the *Microsoft*

38

*Attorneys* were "fully investigated." [RR PTJ (July 2024), p. 25]. Thus, foregoing the need for the CDC to assign Turnbull's Complaints to an Investigatory Hearing Panel to elicit additional evidence to assist her in carrying out her obligations. TEX. RULES DISCIPLINARY P. R. 2.12, 2.13, and 2.14.

Further, Turnbull's own documentation showing he was able to continue filing grievances twice more against the *Microsoft Attorneys* in 2022, even after his first Complaints against the *Microsoft Attorneys* were dismissed by the Summary Disposition Panel on September 21, 2021, refutes any allegation that his "free speech" was ever "chilled," as alleged in his original petition. [CR 21-25, 32, 804-1040, 1261-1415].

## II. Turnbull has not suffered a "non-hypothetical injury," and he does not have standing to bring this lawsuit because he possesses no private cause of action for the dismissal of his grievances and/or complaints he submitted against his opposing counsel. Further, Turnbull can seek redress against his opposing counsel in the 190th Judicial District Court.

In essence, Turnbull is claiming that he has suffered "an injury" because: (1) he has not received the satisfaction of seeing his opposing counsel sanctioned (as a result of the multiple grievances he filed against them); (2) he was not notified "why" his Complaints were dismissed by the Summary Disposition Panel; and (3) he was not allowed to amend and file a third set of grievances against his opposing counsel

on or about August 11, 2022.[11] [CR 3-34]. More specifically, in his original petition, Turnbull claims the *Microsoft Attorneys* committed "multiple acts of misconduct" and expresses his belief that the "CDC has maintained the erroneous position that Mr. Turnbull's Grievances do not allege professional misconduct." [CR 24-25]. However, as set forth above, the CDC's and/or Turnbull's "position" on his "Grievances" did not determine whether his grievances/Complaints would be prosecuted. TEX. RULES DISCIPLINARY P. R. 2.13.

In his Appellant's Brief, Turnbull focused his argument on his claims that he suffered a "non-hypothetical injury" because he was not notified as to "why" his Complaints against his opposing counsel were dismissed. [Apt. Br., 4, 8-13]. And while this argument appears to be Turnbull's way of dancing around the existence of well-established precedents - holding that a complainant who files a bar grievance cannot suffer a constitutionally recognized injury related to the outcome of an investigation of his/her grievances - Turnbull still seemingly claims he has been "denied relief" due to the dismissal of his Complaints, and expresses his belief that he should be able to seek "redress" against the *Microsoft Attorneys* via the "Texas State Bar." [CR 25].

---

[11] TRDP 2.10(A), limits how many times a complainant can amend his grievance against a respondent attorney. TEX. RULES DISCIPLINARY P. R. 2.10(A). However, that does not prevent a complainant from filing a *new* grievance against the same respondent attorney.

Despite Turnbull's beliefs, the Texas Supreme Court has clearly set forth that the TDRPC and TRDPs "do not undertake to define standards of civil liability of lawyers for professional conduct" and that "Violation of a rule does not give rise to a private cause of action…" TEX. DISCIPLINARY R. PROF. CONDUCT, PREAMBLE ¶15. That is, the Texas attorney disciplinary system is not a place for Turnbull to seek personal "redress" for the perceived misconduct he believes was perpetrated against him by his opposing counsel in the lawsuit he brought against Microsoft. As a result, Turnbull cannot show he sustained a constitutionally-recognized injury or has standing to sue Appellees. *Martinez* 797 F. App'x. 167, 168 (5th Cir. 2020); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Rosales v. Comm'n for Lawyer Discipline,* No. 03-18-00725-CV, 2020 WL 1934815 at *3 n.3 (Tex. App. – Austin Apr. 22, 2020, no pet.)(mem. op). And as the Honorable U.S. Magistrate Judge Mark Lane pointed out in his Report and Recommendation in Turnbull's federal lawsuit (dated January 25, 2024), "First, Turnbull cites no authority that he has been injured in any constitutionally-recognized way by the handling of his grievances. Second, if he is still involved in litigation with the complained-of attorneys and their actions in that litigation are problematic, his obvious means of redress is to raise his concerns with the trial court." [Supp CR 1865].

Before the trial court, ***Turnbull didn't just complain about*** not receiving an explanation as to "why" the Summary Disposition Panel dismissed his Complaints.

He requested the trial court issue an injunction to command the CFLD "to re-open" his grievances against the *Microsoft Attorneys*, and another injunction against the CFLD, and the CDC in an attempt to prevent them from carrying out their obligations under the TRDPs – arguing that their following the TRDPs would cause him "irreparable injury or extreme hardship". [CR 31]. In fact, his own counsel told the trial court in the underlying state lawsuit that one of Turnbull's contentions was that even though his Complaints against his opposing counsels were "**fully investigated,**" Turnbull believes they were **"improperly"** dismissed by the volunteer Summary Disposition Panel. [RR PTJ (July 2024), p. 25.]

Turnbull also tried to argue that if his injunction requests were not granted, he believes he "will be kept from any mechanism to reprimand attorneys who misrepresent the truth and file dishonest pleadings with a court…" [CR 32]. However, neither the Texas Supreme Court nor the Texas Legislature has given the CFLD or the CDC any authority to "re-open" grievances. And as set forth in the Texas Supreme Court's recent decision in *Webster*, it is clear that "the court overseeing the conduct" of which Turnbull complains of (the 190th Judicial District Court), is the "appropriate disciplinary authority" where he should seek redress. *Webster,* 2024 WL 524949 at *19.

At bottom, Turnbull has no standing to bring this lawsuit. He does not possess a cognizable cause of action because a complainant attempting to use the attorney

42

grievance process against opposing counsel in "ongoing" litigation is simply not a party to a disciplinary proceeding. *Martinez,* 797 F. App'x. at 168 (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973)); *Rosales v. Comm'n for Lawyer Discipline,* 2020 WL 1934815 at *3 n.3 (Tex. App. – Austin Apr. 22, 2020, no pet.).

Turnbull is also "unable to show that the consideration of his bar grievance 'produce[d] erroneous or unreliable results [that] imperil[ed] a protected liberty or property interest.'" *Martinez v. State Bar of Texas*, 797 F. App'x. at 168 (citing *Johnson v. Rodriguez*, 110 F.3d 299, 308 (5th Cir. 1997)). As such, Turnbull could not have sustained a "non-hypothetical injury," merely because the Summary Disposition Panel told him that his Complaints had been dismissed, <u>without telling him "why" they had been dismissed.</u>[12] And his claims based on an alleged failure to prosecute another person are outside the court's subject matter jurisdiction for lack of standing. *Lefebure v. D'Aguilla,* 15 F.4th 650, 654 (5th Cir. 2021).

### A. Turnbull's Erroneous Open Courts Claim.

---

[12] Unlike in the case Turnbull cites in support of his arguments, *Heckman v. Williamson Cnty.*, 369 S.W.3d 137 (Tex. 2012) - where the plaintiffs were actual parties in the underlying criminal cases against them that had the potential of resulting in their imprisonment (loss of liberty interest), and their lawsuit against Williamson County related to visiting judge's refusal to appoint them counsel to represent them in those criminal matters, in violation of their constitutional right to counsel and the Texas Fair Defense Act – **here, Turnbull was not a party to** – and did not possess any interest in - the prosecution of his grievances against his opposing counsel. *Linda R.S.* at 619. That is because, "a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Linda R.S.*at 619.

The "open courts" provision provides that: "all courts shall be open, and every person for an injury done to him, in his lands, goods, person or reputation, shall have remedy by due course of law." TEX. CONST. ART. I, § 13. "The open courts provision includes at least three separate guarantees: (1) courts must actually be operating and available; (2) the Legislature cannot impede access to the courts through unreasonable financial barriers; and (3) meaningful remedies must be afforded, 'so that the legislature may not abrogate the right to assert a well-established common law cause of action unless the reason for its action outweighs the litigants' constitutional right of redress.'" *Howell v. Texas Workers' Comp. Comm'n,* 143 S.W.3d 416, 444 (Tex.App.-Austin 2004, pet. denied) (quoting *Texas Workers' Comp. Comm'n v. Garcia,* 893 S.W.2d 504, 520 (Tex.1995)) (internal citations omitted). However, the open courts provision "applies only to statutory restrictions of a cognizable common law cause of action." *Peeler v. Hughes & Luce*, 909 S.W.2d 494, 499 (Tex. 1995) (citing *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 355-56 (Tex. 1990)). In this matter, Turnbull possesses no common law cause of action.

1. ***Tex. Gov't Code §81.072(b)(2) does not direct Appellees to find out from the volunteer members of a Summary Disposition Panel the reason(s) "why" they dismissed a grievance and then provide a complainant (like Turnbull) with such information. TRDP 2.13 specifically sets forth what type of notice is given to a complainant when a Summary Disposition Panel dismisses a complaint.***

Here, Turnbull seemingly attempts to argue he has standing to bring this

44

lawsuit because Appellees somehow violated Art. I, Section 13 of the Texas Constitution, which requires that the courts be open. He implies that under Section 81.072(b)(2) of the Texas Government Code, he was entitled to a "full and fair" explanation of the reason(s) why his complaints against the *Microsoft Attorneys* were dismissed, and the lack thereof caused him a "non-hypothetical injury." [Apt. Br., 18]. He also appears to suggest that Tex. Gov't Code §81.072(b)(2) somehow restricts the Texas Supreme Court's "powers under the constitution to regulate the practice of law" and "administrative control over the state bar," and/or effectively commands Appellees to act outside of the authority given to them under the Texas Supreme Court's promulgated TRDPs, and indeed, against the admonitions of Tex. Gov't Code 81.0752(a) regarding confidentiality. [CR 18-19].[13] TEX. GOV'T CODE §§§81.011(b)-(c), 82.072(b)(2) & 82.0752(a). Clearly, Appellees are not exempted from the State Bar Act's own confidentiality requirements.

Regardless, Turnbull's claim is erroneous and unfounded, because the Texas Supreme Court has not promulgated a disciplinary procedure rule that gives any of the Appellees the ability, and/or authority, to provide such an explanation to

---

[13] As set forth in *Webster* – the State Bar Act "encouraged systematizing and simplifying the disciplinary process by 'empowering the Supreme Court to prepare, propose, adopt[,] and promulgate rules and regulations for disciplining, suspending[,] and disbarring attorneys at law." However, the State Bar Act, "is not the source – much less the sum- of judicial authority to regulate the practice of law." *Webster,* 2024 WL 524949 at *8 (referencing Act of Apr.6, 1939, 46th Leg., R.S., ch.1, 1939 Tex. Gen. Laws 64, 64.)

Turnbull. And, as alluded to above, the Texas Supreme Court has already promulgated a very specific rule informing complainants as to the type of notice they will receive if their Complaint is dismissed by a Summary Disposition Panel. TEX. RULES DISCIPLINARY P.R. 2.13.

While Turnbull wants to argue that Appellees are "required to follow the Texas Legislature's instructions in the State Bar Act," *he fails to set forth even one applicable Legislative instruction that is directed towards any Appellee*, and not the Texas Supreme Court. [Apt. Br., 11]. In addition, Turnbull and his counsel are keenly aware that Appellees have already been put on notice by the Texas Supreme Court, and the Third Court of Appeals, that they are ***required to follow the TRDPs***. See TEX. RULES DISCIPLINARY P.R. 17.09, and *Doe v. Board of Dirs. of State Bar of Tex.,* No. 03-15-00007-CV, 2015 WL 6656216, *4-5 (Tex.App. – Austin Oct. 27, 2015, pet. denied)(mem. op). Further, the Texas Legislature has specifically told the CDC that she is to perform her "disciplinary functions for the state bar under the Texas Disciplinary Rules of Professional Conduct and the Texas Rules of Disciplinary Procedure." TEX. GOV'T CODE §81.076(g).

Contrary to Turnbull's claim that Section 81.072(b)(2) of the Texas Government Code supports his argument and grants him a "statutory right to an explanation as to why his grievances were dismissed," Section 81.072(b)(2) is clearly directed at the Texas Supreme Court, and not to any of the named Appellees

that Turnbull has sued. And, in fact, Section 81.072(b)(2) does not even possess language that could be seen as authorizing any of the Appellees (listed in his lawsuit) to ask a Summary Disposition Panel "why" they dismissed his complaints and then convey to him what the panel members told them was the reasoning for the dismissal. [Apt. Br., 8].

Again, TRDP 2.13 clearly states that "If the Summary Disposition Panel dismisses the Complaint, both the Complainant and Respondent will be so notified." TEX. RULES DISCIPLINARY P.R. 2.13. Such seems practical since none of the Appellees would have any insight into the panel's reasoning.

**2. Tex. Gov't Code §81.0752 and TRDP 2.16 mandate that all Appellees not disclose "any type of information" to a complainant (like Turnbull), if that information was presented to a volunteer panel of a district grievance committee and dismissed pursuant to TRDP 2.13.**

In accordance with Section 81.0752 of the Texas Government Code - which clearly limits the explanation that can be provided to a complainant, by setting forth that: "**All types of information**, proceedings, hearings, transcripts, and statements presented to a panel of a district grievance committee are confidential and may not be disclosed to any person other than the chief disciplinary counsel unless: (1) disclosure is ordered by a court; or (2) the panel finds that professional misconduct occurred," - the Texas Supreme Court promulgated Rules 2.10, 2.13, and 2.16 of

the TRDPs to prevent such violations. TEX. GOV'T CODE §81.0752; TEX. RULES DISCIPLINARY P.R. 2.10, 2.13, & 2.16.

TRDP 2.16, provides that "All members and staff of the Office of the Chief Disciplinary Counsel, Board of Disciplinary Appeals, Committees, and Commission **shall maintain as confidential all Disciplinary Proceedings and associated records** (emphasis added)," unless an exception applies under the rule. TEX. RULES DISCIPLINARY P.R. 2.16. And Section 81.0752 of the Texas Government Code, clearly refers to "All types of information," that are presented to a Summary Disposition Panel. TEX. GOV'T CODE §81.0752. If Turnbull believes TRDP 2.16 is "unconstitutional", as he alleges in his original petition, he can petition the Texas Bar's Committee on Disciplinary Rules and Referenda (CDRR) to propose a rule change, in accordance with the process that the Texas Legislature has provided him under Section 81.0875(c) of the Texas Government Code. [CR 30, 34]; TEX. RULES DISCIPLINARY P.R. 2.12 and 2.13; TEX. GOV'T CODE §81.0875(c).

That said, currently the restrictions set forth in Section 81.0752 also limit the information or "explanation" that can be provided to a non-party complainant like Turnbull. And, as set forth above, TRDP 2.13 provides only that if "the Summary Disposition Panel dismisses the Complaint, both the Complainant and Respondent will be so notified." Nothing more. TEX. RULES DISCIPLINARY P.R. 2.13.

48

As Turnbull's own documentation shows, he was informed on or about September 21, 2021, that the Summary Disposition Panel "voted to dismiss the complaint after reviewing all evidence submitted and obtained during the investigation." [CR 775-776, 779-780]. The Summary Disposition Panel reviewed more than 600 pages of documents that were submitted by Turnbull, his attorney West, and the *Microsoft Attorneys*. [CR 207-552, 556-650]; [Supp CR 4-163, 821-825, 1240-1248]. They also reviewed multiple submissions by Turnbull, as well as West's arguments and requests that the Summary Disposition Panel find that the *Microsoft Attorneys* counsel committed professional misconduct as to more than six (6) TDRPC rules. [CR 18-20, 556-564, 656-664]. Most complainants could discern from a Summary Disposition Panel's dismissal of their complaints, that the volunteer panel did not agree with his/her arguments and/or that the documentation he presented supported his accusations.

Nevertheless, it also seems plausible that the Texas Supreme Court promulgated TRDP 2.13, because they did not want volunteer members of a grievance committee panel to have to sit down and write a letter to a complainant, telling the complainant that they dismissed his complaint(s) (as to each and every alleged rule violation) because: (1) the complainant is not believable; (2) the complainant is actually the one that threatened his opposing counsel and participated in the filing of disciplinary grievances against opposing counsel; and/or (3) they

49

chose to believe the declarations provided by his opposing counsels instead of his arguments. Either way, here, Turnbull is not able to plead or show how he was injured just because he did not receive an explanation as to "why" his Complaints were dismissed **on top of** being informed that the Summary Disposition Panel chose to dismiss his Complaints. Further, Turnbull cannot plead that any Appellee actually possesses such information, or that the Texas Supreme Court has promulgated a rule requiring the volunteer members of a Summary Disposition Panel to pen such a letter.

At the point that Turnbull's Complaints were dismissed by a Summary Disposition Panel, or his subsequent grievances were classified as inquiries (pursuant to TRDP 2.10), all Appellees listed under TRDP 2.16, were bound by the Texas Supreme Court's promulgated rules and Section 81.0752 of the Texas Government Code, as to what information, if any, could be provided to Turnbull. Even **if** the TRDPs were to conflict with the State Bar Act in this respect (and Appellees do not believe there *is* such a conflict), "When a provision of the State Bar Act conflicts with an order of the Supreme Court regulating and controlling the practice of law, the statutory provision must yield to the Court's rule." *Daves v. State Bar of Texas*, 691 S.W.2d 784, 789 (Tex.App. – Amarillo 1985, writ ref'd n.r.e.) (citing *Banales v. Jackson,* 601 S.W.2d 508, 512 (Tex. Civ. App. – Beaumont 1980).

50

As such, Turnbull's claims under Art. I, Section 13 of the Texas Constitution fail, because <u>Turnbull has no legal basis to compel Appellees to violate the TRDPs</u>, or Section 81.0752 of the Texas Government Code.

## B. Turnbull's Erroneous Due Course of Law Claim

Article 1, Section 19 of the Texas Constitution states that "[n]o citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." TEX. CONST. ART. I, § 19. Texas courts have considered federal interpretations of procedural due process when applying Texas's guarantee of due process of law. *Univ. of Tex. Med. School at Houston v. Than*, 901 S.W.2d 926, 929 (Tex. 1995). When determining whether a governmental action violates the due course of law guarantee, the courts engage in a two-step inquiry. *Id.* The court first determines if the plaintiff has an enumerated interest that is entitled to protection, and if so, then did the governmental agency follow due course of law in depriving the plaintiff of that interest. *Id.*

Here, as set forth above, Turnbull cannot even show he has a "protected liberty or property interest" in a Summary Disposition Panel's ultimate decision concerning his complaints against his opposing counsels. *Martinez,* 797 F.App'x at 168. Additionally, Turnbull's attempts to claim he has a "right" to a "full and fair explanation" for "why" his Grievances were dismissed…" by the Summary Disposition Panel, and <u>his argument that application of TRDP 2.16 is</u>

51

"unconstitutional" and deprives him of that right are meritless, as described above, and still do not provide him a cognizable cause of action against Appellees, who do not possess the information he is seeking. [CR 27, 30, 34].

While Turnbull criticizes the Appellees by saying that their following the TRDPs (as they are obligated to do), amounts to "cloaking the attorney discipline system…" the *record here clearly shows how transparent the process really is*, and solidifies Appellees' argument that they have all complied with their obligations as required by the Texas Supreme Court. [Apt. Br., 20]. For instance, Turnbull's exhibits attached to his original petition show that Turnbull (via West) possessed or was provided with every single document presented to the Summary Disposition Panel. [Supp CR 3-1584]. And at every turn, Turnbull (via West) was allowed to submit multiple letters and emails to the CDC and her staff, containing argument and supporting documents – which thwart Turnbull's conspiracy theories put forth in his original petition. [CR 18-20, 556-651, 652-654, 656-664, 769-770]; [Apt. Br., 15]. Further, said exhibits show West was able to present all of his arguments to the Summary Disposition Panel, which demonstrates the amount of accessibility Turnbull actually was given to the panel. [CR 37-50, 556-564, 656-664]. This included Turnbull's supplemental claims against the *Microsoft Attorneys*, on or about July 7, 2021, and July 28, 2021, which Turnbull later claimed were new

allegations that supported his second set of grievances against his opposing counsel on May 2, 2022. [CR 804-1039]; [Supp CR 821-825, 1240-1248].[14]

Again, because the documentation that Turnbull attached to his own pleadings show that Appellees followed all applicable procedures under the TRDPs, and Turnbull has acknowledged that he was provided notice that the Summary Disposition Panel dismissed his Complaints, in accordance with TRDP 2.13, after they reviewed "all evidence obtained and submitted during the investigation," Turnbull's due course of law argument fails.

### C. Turnbull's Frivolous Equal Protection Claim.

The Texas Supreme Court has held that the equal protection analysis under the federal Equal Protection Clause applies to equal protection challenges under the Texas Constitution. *Bell v. Low Income Women¸* 95 S.W.3d 253, 266 (Tex. 2002). As in federal court, Texas requires a plaintiff to allege "he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Leonard v. Abbott*, 171 S.W.3d 451, 458 (Tex. App.—Austin 2005, pet. denied) (citing *Village of Willowbrook v. Olech,* 528 U.S.

---

[14] In his second set of grievances against the *Microsoft Attorneys,* submitted on May 2, 2022, Turnbull asserted that his opposing counsel gave "contradictory and untrue explanations", and committed professional misconduct because of their "refusal to return property", "threats to pursue a false and baseless criminal investigation" against him, and "neglect and refusal to contact the appropriate agencies." [CR 804-1039]. Such were the same allegations West made on Turnbull's behalf on July 7, 2021, and July 28, 2021, prior to the Summary Disposition Panel's dismissal of his Complaints on September 21, 2021. [Supp CR 821-825, 1240-1248].

562, 564 (2000) *and Allegheny Pittsburgh Coal Co. v. County Commission of Webster County,* 488 U.S. 336, 345–346 (1989)).

While in his federal lawsuit, Turnbull claimed he had been "discriminated against" because of his **"political affiliation as a criminal defense attorney,"** in this lawsuit Turnbull merely claims he is entitled to "equal protection" and Appellees deprived him of his right to equal protection by treating him "differently than other similarly situated complainants in being denied a full and fair explanation for **why** his Grievances were dismissed." [Apt. Br., 11, 13]; [Supp CR 1612, 1646-1647, 1900]; [CR 29]. But, as described exhaustively above, Turnbull was not entitled to an explanation from the volunteer members of the Summary Disposition Panel as to "**why**" his Complaints/grievances were dismissed. He also failed to identify even one other complainant that has ever received such an explanation. As such, Turnbull's statements - implying that the CDC or one of her employees took some action to "discriminate" against him or has the ability to weaponize the disciplinary process - is a gross mischaracterization of the CDC's authority under the TRDPs. [Apt. Br., 14, 20].

As described above in Section I, the CDC is the "administrator of the state bar's grievance procedure as provided by the Texas Rules of Disciplinary Procedure." TEX. GOV'T CODE §81.076(g). And the CDC possesses no independent authority to dismiss a Complaint or prosecute a disciplinary matter. TEX. RULES

DISCIPLINARY P. R. 2.13 and 5.02(D). Additionally, the CDC can be: (1) mandated by the BODA to investigate a complaint (that she previously classified as an inquiry); (2) required to dismiss a complaint heard by an Investigatory Hearing Panel; (3) required by a Summary Disposition Panel to proceed in accordance with Rules 2.14 and 2.15; and (4) required to dismiss a pending disciplinary proceeding or action, at any time, by the CFLD. TEX. RULES DISCIPLINARY P. R. 2.10, 2.12G, and Part III. <u>In no way, does the CDC have any ability to independently decide who will be "prosecuted" under the TRDPs.</u> And Turnbull's claim that after his complaints against the *Microsoft Attorneys* were dismissed, the "CDC thereafter filed disciplinary petitions against …" other prominent attorneys in our state "for the same allegations," is truly a disingenuous declaration from a licensed Texas attorney familiar with the TRDPs. [Apt. Br., at 3]

The CDC is mandated to file disciplinary proceedings/actions (on behalf of the CFLD) pursuant to the TRDPs if an Investigatory Hearing Panel does not dismiss a complaint and is unable to resolve the matter with the respondent attorney. TEX. RULES DISCIPLINARY P. R. 2.12(G). Likewise, the CDC can be mandated to file a disciplinary proceeding/action (on behalf of the CFLD) if required to do so by a Summary Disposition Panel. <u>Such happens</u>, and could have happened with Turnbull's Complaints had the panel "decided that Turnbull's complaint should proceed pursuant to Rules 2.14 and 2.15." TEX. RULES DISCIPLINARY P. R. 2.12, 2.14,

2.15.

The bottom line is that Turnbull failed to name even one other complainant in his original petition who has ever received notice of the "recommendation/reasoning" behind a Summary Disposition Panel's dismissal decision. [CR 4-34]. Most likely because none of the Appellees possess the authority to obtain such information from the volunteer members of a Summary Disposition Panel and then transmit such to a complainant. TEX. RULES DISCIPLINARY P. R. 2.16 and TEX. GOV'T CODE §81.0752. Further, as described above, the Texas Supreme Court specifically promulgated TRDP 2.13, which provides what type of notice a complainant receives when a volunteer Summary Disposition Panel dismisses a complaint. TEX. RULES DISCIPLINARY P. R. 2.13. And the Third Court of Appeals in *Doe v. Board of Directors of State Bar of Texas,* clearly articulated that TRDP 2.16 "does not include an exception for disclosure to complainants" of any documentation related to the "recommendation/reasoning" for the panel determination or allow Appellees to "provide for a full explanation to each complainant on dismissal of a complaint." *Doe, 2015 WL 6656216* at *4. In addition, Texas Courts have already informed litigants like Turnbull that a Texas District Court is powerless to modify Rule 2.16 or implement a new rule. *Id.,* at fn 4, (citing *State Bar of Tex. v. Gomez,* 891 S.W.2d 243, 244-246 (Tex. 1994)).

Either way, as to Turnbull's Open Courts, Due Process of Law, and Equal Protection claims, Turnbull possesses no private cause of action against any Appellees named in this lawsuit and his own documentation shows that he has received the same notice that all complainants receive when a Complaint is dismissed by a Summary Disposition Panel, pursuant to TRDP 2.13.

## III. Turnbull sets forth no plausible claim against Appellees. And all of his allegations center around his dissatisfaction with the volunteer grievance committee panel's "decision" to dismiss his "fully investigated" Complaints.

### A. Turnbull's allegations against Kates, Grosz, and Martinez.

As pertaining to Kates, Grosz and Martinez, Turnbull's original petition failed to allege even a single, plausible cause of action against any of them. [CR 4-34]. In fact, Turnbull dismissed Kates in his similar federal lawsuit, but included her in his subsequent Travis County Lawsuit, despite knowing she works in the CDC's Austin Office, and was never assigned to assist the CDC with the handling of any of his grievances/complaints against his opposing counsels out of the Houston Office. Conspicuously, Kates's name does not appear anywhere in the documentation that Turnbull attached to his original petition related to his grievances/complaints. [CR 34-1419]; [Supp CR 3-199].

As noted above, Turnbull admitted in his pleadings that he was notified on or about September 21, 2021, that a Summary Disposition Panel of the District 4

Grievance Committee ("Summary Disposition Panel") dismissed his Complaints against the *Microsoft Attorneys,* pursuant to TRDP 2.13. [CR 20]. As evident by the documentation he provided, he was notified of said dismissals in accordance with TRDP 2.13, and by former CDC Administrative Attorney Timothy Baldwin. [CR 775-776, 779-780]. Nowhere on said notices do Kates, Grosz and/or Martinez's names appear on any of the documentation informing Turnbull of the CDC's assignment of his cases to the Summary Disposition Panel or of the subsequent panel determination to dismiss the complaints. And Baldwin was not included in this lawsuit subsequent to Turnbull showing up at his residence unannounced. [Supp CR 1619-1621].

Also - despite Turnbull's assertions - Kates, Grosz, and Martinez do not have "legislative duties" in providing Turnbull with the Summary Disposition Panel's explanation as to "why" his complaints were dismissed. That is, because they do not possess such information, and the CDC and her employees are required by the Texas Legislature and Texas Supreme Court to follow the TDRPC and TRDPs. TEX. GOV'T CODE §81.076(g) and TEX. RULES DISCIPLINARY P. R. 5.01.

Again, as set forth above, Section 81.072(b)(2) is directed to the Texas Supreme Court and its authority to promulgate of the TDRPC and TRDPs, not the CFLD, the CDC, or any of the CDC's employees. To date, the Texas Supreme Court has not promulgated a rule that allows any of the Appellees, or even the members of

the Summary Disposition Panel – who possess such information - to provide Turnbull with such an explanation.

### B. Turnbull's allegations against the CFLD.

As to the CFLD, <u>Turnbull's allegations are clearly frivolous.</u> Turnbull's original petition fails to allege even a single, plausible cause of action/inaction against the CFLD or any of its twelve voluntary members (six of which are appointed by the Texas Supreme Court). [CR 4-35]. In fact, TRDP 2.14(A), sets forth that the CFLD <u>only</u> becomes a party to a disciplinary proceeding if a Complaint "is not dismissed after an investigatory hearing or by a summary disposition panel, or resolved through a negotiated judgment entered by an investigatory panel." TEX. RULES DISCIPLINARY P.R. 2.14(A).

Again, Turnbull admitted he was notified on September 21, 2021, that a Summary Disposition Panel of the District 4 Grievance Committee dismissed his Complaints against the *Microsoft Attorneys*, pursuant to TRDP 2.13. Turnbull also admitted that no "Just Cause" was ever found as to any of his complaints or grievances against the *Microsoft Attorneys*. [CR 19-21]. As such, Turnbull knows the CFLD was never involved with Turnbull's complaints/grievances against his opposing counsels.

59

### C. Turnbull's allegations against the CDC (Willing) and Brannon.

Turnbull's original petition also fails to allege even a single, plausible cause of action against the CDC (Willing) or Brannon. This is, again, because Turnbull admitted he was notified on or about September 21, 2021, that a Summary Disposition Panel of the District 4 Grievance Committee dismissed his Complaints against the *Microsoft Attorneys,* pursuant to TRDP 2.13. And Rule 2.13 of the TRDPs sets forth that the Summary Disposition Panel had the sole authority to determine whether Turnbull's 2021 complaints could proceed to litigation in accordance with TRDP 2.14 and TRDP 2.15. TEX. RULES DISCIPLINARY P.R. 2.13.

Further, TRDP 5.02(D) clearly provides that the <u>CDC and her staff attorneys have no independent authority to dismiss a Complaint</u>. TEX. RULES DISCIPLINARY P.R. 5.02(D). Thus, Turnbull is aware that the CDC and Brannon never made, or could have made, the ultimate decision to dismiss his Complaints. As such, the trial court correctly found that Turnbull does not have standing to sue Appellees, and thus any claim that he suffered a purported "non-hypothetical injury" would not be "traceable" to any action/inaction on the part of Appellees.

### D. Turnbull's additional false allegations to the trial court.

**Transparency:** In this lawsuit and his federal lawsuit, Turnbull conjured up implausible conspiracy allegations seemingly for the sole purpose of trying to assist West's attempt to bypass Section §81.0875(c) of the Texas Government Code, and

60

to use the district court to change the "legislative structure of the Texas Bar." [Supp CR 1620-1621]. Specifically, Turnbull claimed that "neither the Complainant nor the Respondent Attorney may participate in the Summary Disposition process." [CR 20]. Yet, as evident by the documents attached to his original petition, that statement is completely inaccurate.

As set forth above, the CDC is required by the Texas Supreme Court (via the TRDPs) to "present the Complaint together with any information, documents, evidence, and argument deemed necessary and appropriate," to the Summary Disposition Panel before it makes a determination. TEX. RULES DISCIPLINARY P. R. 2.13. And it is clear from a review of the trial court's record, and the more than 2,000 pages of exhibits that Turnbull attached to his original petition, that that is exactly what happened in a clearly transparent manner. In fact, the exhibits attached to Turnbull's original petition show:

1. Turnbull possesses, and/or was provided with, a copy of the grievance forms, responses, declarations, sur-replies, and investigative documents that encompassed some of the 600+ pages of investigative documents that were presented to the Summary Disposition Panel before the panel made their final decision to dismiss Turnbull's complaints, pursuant to TRDP 2.13, on September 10, 2021. [CR 4-1418]; [Supp CR 4-199].

2. Turnbull and West were allowed to send and present multiple emails and letters to the Summary Disposition Panel containing their arguments with supporting documentation related to Turnbull's complaints against his opposing counsels. [CR 18-20, 556-651, 656-664]; [Supp CR 4-199].

3. Turnbull filed additional grievances against the *Microsoft Attorneys* on May 2, 2022, after Turnbull's original complaints were dismissed by the Summary

Disposition Panel on September 21, 2021. [CR 804-1039]. Turnbull also was allowed to appeal the CDC's classification decision of those May 2, 2022, grievances to the BODA – which BODA affirmed. [CR 1197-1250].

4. There existed ample evidence for the Summary Disposition Panel to make a decision as to Turnbull's claims related to the pleadings, events, and conversations that Turnbull set forth in his complaints against the *Microsoft Attorneys*; including whether Turnbull's opposing counsel violated an ethical rule. That information included Turnbull's own testimony during a Temporary Injunction Hearing, the testimony of other witnesses during the same hearing supporting Microsoft's pleadings, and the existence of Declarations submitted by attorneys Mary-Olga Lovett, Rene Trevino, Brien Jacobsen, Ward Morrison, and Laura P. Hansen – which refuted Turnbull's rendition of the February 6th Meeting. [CR 54-205, 207-241].

Regardless, TRDP 2.13 makes sure that a complainant's Complaint "together with any information, documents, evidence, and argument deemed necessary and appropriate by the Chief Disciplinary Counsel," is presented to the Summary Disposition Panel. TEX. RULES DISCIPLINARY P.R. 2.13. And in this case, Turnbull was allowed to present all of his legal arguments and exhibits to the panel in his crusade to have the *Microsoft Attorneys* sanctioned. [CR 556-651, 656-664, 769-770].

**Investigatory Hearings:** In an effort to mislead the trial court, Turnbull alleged in his original petition that "In 2003, the state law was amended to allow an Investigatory Hearing panel to determine Just Cause," and implies that this change to the law required Appellees to present his Complaints to an Investigatory Hearing Panel as part of the CDC's ongoing investigation to determine if just cause exists. [CR 26-27]. **This argument is completely untrue,** because the amendment

allowing investigatory hearings did not occur until June 1, 2018, and the Texas Supreme Court never amended the TRDPs to "allow an Investigatory Hearing panel to determine Just Cause and decide whether an attorney must select either an Evidentiary Panel review or District Court review." TEX. RULES DISCIPLINARY P. R. 2.12(F); *Sarfo v. Comm'n for Lawyer Discipline*, No. 03-19-00146-CV, 2021 WL 746052, at \*3, fn. 4 (Tex.App. – Austin Feb. 26, 2021, no pet.) (mem. op.). In fact, the Texas Supreme Court's rules grant the CDC discretion to use "an investigatory hearing" as part of her "investigation," and to gather more information with only three possible outcomes following such hearing, none of which include the *Panel's* determination of Just Cause. TEX. RULES DISCIPLINARY P. R. 2.12, 5.02(C).[15]

**Brannon:** Unfortunately, as Turnbull did in his federal lawsuit, Turnbull has expounded on another one of his false narratives. [Apt. Br., 14, 22, 30] [Supp CR 1824, 1827]. That is, despite no finding of professional misconduct against Brannon by any Texas District Court or volunteer grievance committee panel - with the exclusive authority to make such a finding - Turnbull claims Brannon acted in violation of Rule 1.06(b)(2) and failed to disclose he had a "conflict of interest" that prevented him from assisting the CDC with her investigation and handling of

---

[15] Ironically, West provided a copy of his correspondence to Brannon, dated August 16, 2021, where West indicated his understanding that an investigatory hearing is a **"tool"** that can be used to assist the CDC in her initial determination of Just Cause. [CR 769-770]. Another example of the disingenuous and insincere nature of Turnbull's pleadings currently before this court.

Turnbull's complaints. [Apt. Br., 14, 22, 30]; [Supp CR 1824, 1827]. As Turnbull did in his federal lawsuit, he in essence is claiming Brannon's purported improper "conflict of interest," led Brannon to discriminate against Turnbull by recommending that Turnbull's First Grievances be placed on the Summary Disposition docket. [Apt. Br., 14, 22, 30]; [Supp CR 1824, 1827].

However, as set forth above, the CDC, not Brannon, assigned Turnbull's complaints to a Summary Disposition Panel of the District 4 Grievance Committee on August 13, 2021, to determine if Turnbull's Complaints will proceed in accordance with Rule 2.14 and Rule 2.15. TEX. RULES DISCIPLINARY P. R. 2.13. Turnbull even admits such in his original petition when he set forth that on August 16, 2021, Turnbull was notified that "the CDC had placed the First Grievances against Ms. Lovett and Mr. Trevino on a Summary Disposition Panel ("SDP") docket." [CR 19].

In addition, while Turnbull asserts that Brannon "neither disclosed this conflict of interest nor rescued (sic) himself, in violation of numerous Texas Disciplinary Rules," his original petition and supporting exhibits do not even identify that Brannon possessed: (1) any interest that would "adversely" limit his obligations to the CDC; or (2) a disqualifying conflict within the meaning of the TDRPCs, which would be required to support such violation. TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06(b)(2).

The fact is, that the documents attached to Turnbull's pleadings do not properly allege and/or support that Brannon had a "conflict of interest," - **at all**. Moreover, it is telling that Turnbull continues to avoid using the dates of Brannon's prior employment when pushing this narrative. [Apt. Br., 14, 22, 30]; [Supp CR 1824, 1827].

In reviewing all of his federal court and state court pleadings - Turnbull's "conflict of interest" claim is seemingly based solely on his assertion that Brannon was previously employed as an attorney for a lawfirm (Thompson & Knight LLP) in 2013, which eventually merged into a new lawfirm (Holland & Knight) in 2021 (eight years after Brannon left Thompson & Knight and well after he became employed by the State Bar of Texas in 2018), and that the new lawfirm (Holland & Knight) subsequently represented a Microsoft attorney (who was not one of the *Microsoft Attorneys* Turnbull grieved in Texas) eight years after Brannon left Thompson & Knight. Turnbull's unsupported, conclusory assertion is that this set of facts somehow created a disqualifying conflict that prohibited Brannon from assisting the CDC in her handling of Turnbull's subsequent complaints against the *Microsoft Attorneys.* [Apt. Br., p. 14, 22, 30]; [Supp CR 1824, 1827].

While Turnbull publicly made these allegations in his original petition and through the media (premised on a purported "anonymous email", apparently without doing any minimal investigation)  - accusing Brannon of "violating multiple rules of

65

professional misconduct" – fortunately only a Texas District Court or Grievance Committee panel has the exclusive authority to make such a finding. TEX. RULES DISCIPLINARY P. R. 2.17 and 3.09; TEX. GOV'T CODE §81.072. Especially, since Turnbull has not, and cannot even set forth pleading(s) asserting Brannon has, or ever had, a relationship with the new firm of Holland & Knight, the Microsoft Corporation, and/or owed any fiduciary responsibilities to the Microsoft Corporation that could have been seen as adversely limiting his responsibilities to the CDC.[16]

**TRDP Decisions:** In his original petition, Turnbull tried to argue a purported "unequal treatment" claim, by falsely stating that Appellees "arbitrarily" decide who "will face either an Evidentiary Panel's review, or a District Court's review." [CR 26-30]. He even claimed that such amounted to "illegal actions," on the part of Appellees. [CR 27]. But the TRDPs, <u>clearly set forth that it is **actually the respondent attorney that**</u> makes this election under TRDP 2.15, and not Appellees. TEX. RULES DISCIPLINARY P. R. 2.15. That means that if the Summary Disposition Panel would have decided that Turnbull's Complaints should proceed in accordance with Rule 2.14 and 2.15, then the *Microsoft Attorneys*, <u>and not any of the named Appellees</u>, would have had to decide whether they wanted the disciplinary matter against them heard before an Evidentiary Panel or District Court. Again, such is just

---

[16] In Plaintiff's Original Petition, Turnbull even went so far as to <u>falsely</u> claim Brannon was "formerly a partner at the law firm of Thompson & Knight, LLP.," and indicates such was supported by an "anonymous email," that he received. [CR 23].

another example of the arguments that Turnbull attempted to conjure up before the

trial court in an attempt to support his frivolous lawsuit.

**IV.    Because Appellees are obligated to follow the TRDPs, and Turnbull's own supporting documents show that none of the Appellees committed a "ministerial, ultra vires" act, Appellees are entitled to protection under Sovereign Immunity and/or the immunity protections provided them under TRDP 17.09.**

### A. The CFLD and its members are entitled to Sovereign Immunity and/or immunity protections under TRDP 17.09.

A party suing a governmental entity must establish the state's consent, which

may be alleged either by reference to a statute or to express legislative permission.

*Dep't of Transp. v. Jones*, 8 S.W.3d 636, 638 (Tex. 1999)(per curiam)(citing

*Missouri Pacific Railroad Co. v. Brownsville Navigation District*, 453 S.W.2d 812,

814 (Tex. 1970)). And, absent a waiver by the Texas Legislature or "*ultra vires*"

acts by a government official, "sovereign immunity continues to protect state

officials from both suit and liability in their official capacities." *Matzen v. McLane,*

659 S.W.3d 381, 388 (Tex. 2021) (citing *Hall v. McRaven,* 508 S.W.3d 232, 238

(Tex. 2017); and *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009)).

To fall within the ultra vires exception to state actors' sovereign immunity, a

suit "must not complain of a government officer's exercise of discretion, but rather

must allege, and ultimately prove, that the officer acted without legal authority or

failed to perform a purely ministerial act." (emphasis added). *Heinrich* at 372.

Here, Turnbull has not even identified any of the CFLD members individually or any action/inaction taken by a CFLD member that is the basis for his lawsuit. [CR 4-35]. And Turnbull has presented no viable claims against any member of the CFLD that would support his citing of *Tex. Dep't of Health Serv. v. Holmes,* 294 S.W.3d 328 (Tex. App. – Austin 2009, pet denied). Especially, in light of the fact that Turnbull was the complainant who filed the grievances against his opposing counsels, and not the respondent attorney to a disciplinary proceeding. *Martinez,* 797 F.App'x at 168. In addition, Turnbull can make no plausible claim against the CFLD, or any of its members; because the CFLD never became a party to any disciplinary proceedings involving Turnbull's opposing counsels. TEX. RULES DISCIPLINARY P. R. 2.14(A).

The CFLD is a standing committee of the State Bar of Texas, which is a governmental agency that is entitled to protection afforded by sovereign immunity. *Willie v. Comm'n for Lawyer Discipline*, No. 14-10-00900-CV, 2011 WL 3064158, at \*4 (Tex. App.—Houston [14th Dist.] July 26, 2011, pet. denied) (mem. op.) (citing TEX. GOV'T CODE §§s81.011 and 81.076 in holding that the Commission is subdivision of state and entitled to assert doctrine of sovereign immunity). In addition, sovereign immunity protects the State of Texas and its agencies from lawsuits, including suits for declaratory or injunctive relief, unless immunity has

been expressly waived. *Texas Dep't of Transp. v. Sefzik,* 355 S.W.3d 618, 621-622 (Tex. 2011) (per curiam); *Harris Cnty. v. Sykes,* 136 S.W.3d 635, 638 (Tex. 2004).

In addition, the Texas Supreme Court promulgated TRDP 17.09, which provides that "All members of the Commission … are immune from suit for any conduct in the course of their official duties." TEX. RULES DISCIPLINARY P. R. 17.09. Texas courts have also analyzed TRDP 17.09 and previously upheld the State Bar of Texas and the CFLD members' immunity protection under the TRDPs. *Crampton v. Farris,* 596 S.W.3d 267, 273-74 (Tex. App. – Houston [1st Dist.] 2019)(stating "Rule 17.09's immunity provision is similar in nature to the doctrine of absolute prosecutorial immunity recognized at common law because it provides immunity 'for any conduct in the course of their official duties'")(also citing *Imbler v. Pachman,* 424 U.S. 409, 422-423 (1976) (absolute immunity of prosecutor defeats suit at outset so long as prosecutor's actions were within scope of immunity)).

While Turnbull seemingly tries to assert that the Texas Supreme Court had no authority to promulgate TRDP 17.09, on his premise that the Texas Legislature did not give the Texas Supreme Court such authority, again, the State Bar Act "is not the source – much less the sum - of judicial authority to regulate the practice of law."[17] And regardless, the Texas Legislature did recognize that it was up to the

---

[17] See FN 13, *supra*.

69

Court to establish the standards and procedures that guide the Bar in assisting it to oversee the conduct of Texas-licensed attorneys. TEX. GOV'T CODE §81.072(a).

The Texas Supreme Court's authority to regulate the practice of law derives from Article II, Section 1 of the Texas Constitution. TEX. CONST. ART. II, SEC. 1. And such is an "inherent regulatory power," implicating the Texas Supreme Court's supervisory role in such regulation. *Eichelberger v. Eichelberger*, 582 S.W.2d 395, 398-99 (Tex. 1979). Additionally, TRDP 17.09, arguably also derives from absolute judicial immunity (that has been recognized at common law for more than a hundred years), because it provides for immunity "for any conduct," taken, "in the court of their official duties" *Imbler* at 422-23. In fact, such immunity protections derive from cases like *Griffith v. Slinkard,* 146 Ind. 117, 44 N.E. 1001, and *Yaselli v. Goff,* 12 F.2d 396, 406 (1926) (providing that absolute judicial immunity is "grounded on principles of public policy")

Here, the Texas Supreme Court promulgated TRDP 17.09, for arguably situations just like this one. Where <u>Turnbull has sued more than fifty (50) individuals just because he does not like the correspondence he received, on September 11, 2021, that Appellees were mandated to provide Turnbull in carrying out their obligations to the Texas Supreme Court (under the TRDPs)</u>. TEX. RULES DISCIPLINARY P. R. 2.13.

***B.*** *Willing, Kates, Brannon, Grosz, and Martinez, are entitled to Sovereign Immunity, and/or the immunity protections provided them under TRDP 17.09, because they complied with all rules.*

For the same reasons set forth above, the CDC (Willing), Kates, Brannon, Grosz, and Martinez are entitled to sovereign immunity protection, and the immunity protections afforded them under Rule 17.09 of the TRDPs.

Again, to fall within the ultra vires exception to state actors' sovereign immunity, a suit "must not complain of a government officer's exercise of discretion, but rather must allege, and ultimately prove, that the officer acted without legal authority or failed to perform a purely ministerial act." (emphasis added). *Heinrich* at 372.

Here, as to Kates, Brannon, Grosz, and Martinez, Turnbull makes no plausible allegation because the individual that provided him notice that the Summary Disposition Panel dismissed his Complaints against his opposing counsel was Timothy Baldwin, who is not a party to this lawsuit. As to the CDC (Willing), Turnbull only seemingly complains that the CDC made the <u>discretionary decision</u> that she had completed her investigation of Turnbull's Complaints and assigned them to a Summary Disposition panel to determine if his complaints should "proceed in accordance with Rule 2.14 and Rule 2.15" of the TRDPs. [CR 775-776, 779-780]. TEX. RULES DISCIPLINARY P. R. 2.13. And Turnbull's exhibits show that all Appellees complied with their obligations under the TRDPs, including Rules 2.10,

2.13, and 2.16 of the TRDPs, as to all notices he received, and that the volunteer members  the Summary Disposition Panel "reviewed all the evidence submitted and obtained during the investigation," as presented to them before deciding to dismiss Turnbull's complaints. [CR 18-20, 556-651, 652-654, 656-664, 769-770].

In addition, even if Turnbull had made a plausible claim, TRDP 17.09 reiterates that the immunity provided to the CDC, and her staff members are for any conduct taken in the course of their official duties:

> All members of the Commission, the Chief Disciplinary Counsel (including Special Assistant Disciplinary Counsel appointed by the Commission [for Lawyer Discipline] and attorneys employed on a contract basis by the Chief Disciplinary Counsel), all members of Committees, all officers and Directors of the State Bar, and the staff members of the aforementioned entities are immune from suit for any conduct in the course of their official duties. The immunity is *absolute and unqualified* and extends to all actions at law or in equity.
> —TEX. RULES DISCIPLINARY P. R. 17.09 (emphasis added).

The CDC (Willing), Kates, Brannon, Grosz, and Martinez are, or were, attorneys employed by the office of the CDC during the time Turnbull filed his complaints/grievances against his opposing counsels. Therefore, if Turnbull had made an actual claim against them, his claim would not have survived the broad protection provided by TRDP 17.09. *Crampton v. Farris,* 596 S.W.3d 267, 273-74 (Tex. App. – Houston [1st Dist.] 2019). As such, all are entitled to the protections afforded them under TRDP 17.09.

72

**CONCLUSION AND PRAYER**

**TURNBULL'S LAWSUIT IS A CLASSIC EXAMPLE OF A LITIGANT ATTEMPTING TO USE THE MEDIA AND OUR TEXAS COURT SYSTEM TO BYPASS THE PROCESS THAT THE TEXAS LEGISLATURE HAS ALREADY SET UP FOR OUR STATE'S LICENSED ATTORNEYS TO PROPOSE CHANGES TO THE TDRPCS AND TRDPS (SEE SUPP CR 1620-1621). AND THE TRIAL COURT CORRECTLY FOUND THAT TURNBULL'S LAWSUIT WAS FRIVOLOUS.**

While Turnbull may have good reason to be frustrated with the Microsoft Corporation (as outlined in his underlying Harris County lawsuit) his actions of misdirected retribution against Appellees and 50+ volunteers and employees of the State Bar of Texas – merely because he believes a volunteer panel of the District 4 Grievance Committee "improperly" dismissed his "fully investigated" Complaints against the *Microsoft Attorneys* – are inappropriate and frivolous. And the fact that Turnbull is aware that his pleadings are contradicted by his own exhibits, yet he chose to push forth with his public attempts to insult, degrade, and sue Appellees – knowing that Appellees are obligated to follow the TRDPs and most had no involvement (whatsoever) with the grievances he filed against his opposing counsel in his lawsuit against the Microsoft Corporation, is also concerning.

The bottom line is that not one of the Appellees named in his lawsuit made the "decision" to dismiss Turnbull's Complaints and/or possesses the volunteer members' reasoning as to "why" they decided to dismiss his Complaints. And Turnbull knows that if he doesn't like the TRDPs, the Texas Legislature has given

73

him the means to propose changes to the rules. For all these reasons, Appellees pray this Court affirm the trial court's dismissal of Turnbull's Travis County Lawsuit as frivolous and with prejudice.

Respectfully submitted,

SEANA WILLING
CHIEF DISCIPLINARY COUNSEL

MICHAEL G. GRAHAM
APPELLATE COUNSEL

_____
ROYCE LEMOINE
STATE BAR CARD NO. 24026421
DEPUTY COUNSEL FOR ADMINISTRATION
OFFICE OF THE CHIEF DISCIPLINARY COUNSEL
COMMISSION FOR LAWYER DISCIPLINE
STATE BAR OF TEXAS
P.O. BOX 12487
AUSTIN, TEXAS 78711-2487
512.427.1350; FAX: 512.427.4167
royce.lemoine@texasbar.com

## CERTIFICATE OF COMPLIANCE

Pursuant to the Texas Rules of Appellate Procedure, the foregoing brief on the merits contains approximately 12,694 words (total for all sections of brief that are required to be counted), which is less than the total words permitted by the TRAPs. Counsel relies on the word count of the computer program used to prepare this petition.

_____
ROYCE LEMOINE

## CERTIFICATE OF SERVICE

This is to certify that the above and foregoing brief of Appellees, the Commission for Lawyer Discipline, Seana Willing, Amanda M. Kates, John S. Brannon, Daniela Grosz, and Daniel Martinez, was served by electronic service through this Court's electronic filing service provider on the 3rd day of February 2025, to the following counsels.

_____
ROYCE LEMOINE

Gaines West
John "Jay" Rudinger, Jr.
WEST, WEBB, ALLBRITTON & GENTRY, P.C.
1515 Emerald Plaza
College Station, Texas 77845
COUNSEL FOR APPELLANT

Judd E. Stone II
Stone Hilton PLLC
600 Congress Ave., Suite 2350
Austin, Texas 78701
COUNSEL FOR APPELLANT

Patrick W. Mizell
VINSON & ELKINS, L.L.P.
845 Texas Ave., Suite 4700
Houston, Texas 77002

&

Emily S. Bamesberger
Brooke A. Noble
VINSON & ELKINS, L.L.P.
200 W. 6th Street, Suite 2500
Austin, Texas 78701
COUNSEL FOR APPELLEES,
BOARD OF DIRECTORS OF THE STATE BAR OF TEXAS, ET. AL.,

Daniel J. Olds
Jadd F. Masso
David N. Kitner
CLARK HILL PLC
901 Main Street, Suite 6000
Dallas, Texas
COUNSEL FOR APPELLEE, JENNY HODGKINS

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Lauren Baisdon on behalf of Royce LeMoine
Bar No. 24026421
lbaisdon@texasbar.com
Envelope ID: 96922889
Filing Code Description: Brief Not Requesting Oral Argument
Filing Description: Brief Not Requesting Oral Argument
Status as of 2/3/2025 4:00 PM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Pat Mizell | | pmizell@velaw.com | 2/3/2025 3:39:57 PM | SENT |
| Jadd Masso | 24041411 | jmasso@clarkhill.com | 2/3/2025 3:39:57 PM | SENT |
| Royce Lemoine | 24026421 | royce.lemoine@texasbar.com | 2/3/2025 3:39:57 PM | SENT |
| Richard Huntpalmer | 24097857 | Richard.Huntpalmer@texasbar.com | 2/3/2025 3:39:57 PM | SENT |
| Gaines West | 21197500 | gaines.west@westwebb.law | 2/3/2025 3:39:57 PM | SENT |
| John Rudinger | 24067852 | jay.rudinger@westwebblaw.com | 2/3/2025 3:39:57 PM | SENT |
| Daniel Olds | 24088152 | dolds@clarkhill.com | 2/3/2025 3:39:57 PM | SENT |
| Brooke Noble | | bnoble@velaw.com | 2/3/2025 3:39:57 PM | SENT |
| Michael Graham | 24113581 | Michael.Graham@TEXASBAR.COM | 2/3/2025 3:39:57 PM | SENT |
| Emily Bamesberger | | ebamesberger@velaw.com | 2/3/2025 3:39:57 PM | SENT |
| Justin B.Cox | | jbcox@clarkhill.com | 2/3/2025 3:39:57 PM | SENT |
| David Kitner | 11541500 | dkitner@clarkhill.com | 2/3/2025 3:39:57 PM | SENT |

Associated Case Party: EdwardRandolphTurnbull

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Billy SHart | | billy.hart@westwebblaw.com | 2/3/2025 3:39:57 PM | SENT |
| Jay Rudinger | | jay.rudinger@westwebblaw.com | 2/3/2025 3:39:57 PM | SENT |
| Judd Stone | 24076720 | Judd@stonehilton.com | 2/3/2025 3:39:57 PM | SENT |
| Gaines West | | gaines.west@westwebblaw.com | 2/3/2025 3:39:57 PM | SENT |